**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ISOM DANIEL ROGERS,

           Petitioner,

vs.

UNITED STATES OF AMERICA,

           Respondent.

No. C 12-0034-MWB
(No. CR 08-0072)

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S MOTION
PURSUANT TO SECTION 2255**

———————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. The Criminal Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. Standards For § 2255 Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. Procedural Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *1. Preliminary matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *2. Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . 9
      *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *2. Failure to argue against U.S.S.G. § 2B1.1(b)(10)
         enhancement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *3. Failure to adequately investigate Rogers's mental health* . . . . 20
      *4. Failure to argue against the motion for upward departure* . . . 24

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# I. INTRODUCTION

This case is before me on petitioner Isom Daniel Rogers's *Pro Se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 2), filed on March 29, 2012. Rogers claims that his trial counsel provided him with ineffective assistance in various ways. The respondent denies that Rogers is entitled to any relief on his claims.

## A. The Criminal Proceedings

On May 6, 2009, Rogers was charged by a multiple-count Superseding Indictment (Crim. docket no. 21) with five counts of bank fraud via a check cashing scheme. On May 18, 2009, Rogers appeared in front of United States Magistrate Judge Jon S. Scoles to plead not guilty to the Indictment. *See* Crim. docket no. 36.

On July 1, 2009, Rogers appeared before Judge Scoles to change his plea to guilty, pursuant to a plea agreement, to counts four and five of the Superseding Indictment. *See* Crim. docket no. 68. On July 1, 2009, Judge Scoles filed his Report And Recommendation Concerning Pleas Of Guilty, *recommending acceptance of Rogers's guilty pleas. *See* Crim. docket no. 70. Chief Judge Linda R. Reade filed an Order Regarding Magistrate's Report And Recommendation Concerning Defendant's Guilty Pleas, accepting Rogers's guilty pleas, on July 1, 2009. *See* Crim. docket no. 73.

On March 31, 2010, Rogers, by counsel, filed a Motion For New Counsel (Crim. docket no. 210), requesting the court to schedule a sentencing hearing, appoint new counsel, and stating that he anticipated that there would be five issues at sentencing, including "whether there should be a two-level enhancement for production or trafficking

2

of an unauthorized or counterfeit access device pursuant to U.S.S.G. § 2B1.1(b)(10)(B)". *See* Crim. docket no. 210. On April 12, 2010, a hearing was held before Judge Scoles regarding Rogers's Motion For New Counsel. *See* Crim. docket no. 213. Judge Scoles entered an Order (Crim. docket no. 214), summarily denying Rogers's Motion For New Counsel, on April 12, 2010. Rogers then, by counsel, filed a Renewed Motion To Schedule Sentencing Hearing (Crim. docket no. 215), on April 16, 2010.

On October 13, 2010, the Prosecution filed a Sentencing Memorandum And Motions For Upward Departure and Upward Variance (Crim. docket no. 314). The Prosecution argued that an upward departure was appropriate for under-representation of Rogers's criminal history based on his extensive history of violent assaults, particularly assaults against women. *See* Crim. docket no. 314, at 5. The Government also sought an upward variance based on Rogers's history and characteristics, specifically the allegation that Rogers had previously provided false information to the court at the sentencing of another defendant and the allegation that Rogers had made threats against a United States district court judge. *See* Crim. docket no. 314, at 8. The Prosecution also objected to giving Rogers a two-level reduction for acceptance of responsibility. *See* Crim. docket no. 314, at 11.

On October 13, 2010, Rogers, by counsel, filed a Sentencing Memorandum (Crim. docket no. 315), in which he withdrew his objection to paragraphs 42 and 43 of the PSIR. These two sections provided for application of a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(B), for use of an "access device." *See* Third Revised Presentence Investigation Report at 15. Rogers's initial objection to these paragraphs stated "[h]e does not believe the checks meet the definition of an access device." Crim. docket no. 196. Rogers, however, maintained his objection to paragraphs 44 and 45 of the PSIR, which argued that a three-level role enhancement would be appropriate, and

argued, instead, that a two-level role enhancement would be proper in his case. *See* Crim. docket no. 315.

Rogers appeared before me on October 21, 2010, for a sentencing hearing. *See* Crim. docket no. 324. I dismissed counts one, seven, and nine of the Superseding Indictment pursuant to the plea agreement, and found that Rogers's total offense level was 18 with a criminal history category of V, for a United States Advisory Guideline range of 51 to 63 months. *See* Sent. Trans. at 160. I determined that a three-level enhancement, rather than a two-level enhancement, was appropriate for Rogers's role in the offense. *See* Sent. Trans. at 121. I denied any reduction for acceptance of responsibility based on Rogers's prior provision of false testimony in another inmate's sentencing hearing, and granted the Prosecution's motion for upward variance. *See* Sent. Trans. 123 and 160. Without discussing the Government's motion for upward departure, other than to say that I would have reached the same sentence pursuant to a departure analysis, I determined that, given Rogers's prior history for violence, specifically against women, an upward variance to 120 months, from the guideline range of 51 to 63 months, was appropriate. *See* Sent. Trans. 160-163. I indicated that I was granting an upward variance solely because of Rogers's history of violence, and no other reason. *See* Sent. Trans. 161. However, in determining the extent of the variance from the advisory guidelines, I considered the degree to which the imposed sentence should vary from the guidelines, and considered that the sentence should not vary upward to the statutory maximum of thirty years because Rogers was currently being sentenced for a "pretty modest bank fraud case." Sent. Trans. 149.

Rogers, by counsel, filed a Notice of Appeal (Crim. docket no. 327), to the United States Court of Appeals for the Eighth Circuit on October 22, 2010, arguing that I erred by varying upward and by not reducing Rogers's offense level based on acceptance of

4

responsibility. *See* Crim. docket no. 359. On April 15, 2011, the Eighth Circuit Court of Appeals affirmed Rogers's sentence. *See* Crim. docket no. 359.

## B. The § 2255 Motion

On March 29, 2012, Rogers filed a *Pro Se* Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Civ. docket no. 2)("Motion"). On October 5, 2012, Rogers filed a *Pro Se* Memorandum Of Law (Civ. docket no. 4), to support his Motion. Rogers then filed a letter (Civ. docket no. 5), in supplement to his Motion, on August 6, 2012. The Respondent filed an Answer (Civ. docket no. 7), on August 20, 2012. On December 28, 2012, Rogers, by counsel, filed a Petitioner's Supplemental Brief (Civ. docket no. 15), in further support of his Motion. The Respondent filed its Response and Memorandum In Support Of Government's Response To Defendant's Motion (Civ. docket no. 18), on February 27, 2013. Rogers, by counsel, filed his Reply To Government's Response (Civ. docket no. 21), on April 1, 2013.

## II. LEGAL ANALYSIS

### A. Standards For § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to

collateral attack, may move the court which imposed the
sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under
28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the
ground that his sentence was imposed in the absence of jurisdiction or in violation of the
Constitution or laws of the United States, was in excess of the maximum authorized by
law, or is otherwise subject to collateral attack."); *Bear Stops v. United States,* 339 F.3d
777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate
a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant
to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal
Habeas corpus.'" *United States v. Wilson,* 997 F.2d 429, 431 (8th Cir. 1993) (quoting
*Davis v. United States,* 417 U.S. 333, 343 (1974)); *accord Auman v. United States,* 67
F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided
on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28
U.S.C. § 2255.'" *Theus v. United States,* 611 F.3d 441, 449 (8th Cir. 2010) (quoting
*United States v. Wiley,* 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops,* 339 F.3d at 780.
One exception to that principle arises when there is a "miscarriage of justice," although
the Eighth Circuit Court of Appeals has "recognized such an exception only when
petitioners have produced convincing new evidence of actual innocence," and the Supreme
Court has not extended the exception beyond situations involving actual innocence. *Wiley,*
245 F.3d at 752 (citing cases, and also noting that "the Court has emphasized the
narrowness of the exception and has expressed its desire that it remain 'rare' and available
only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to
relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to

6

correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Rogers's claims for § 2255 relief.

7

## B. Procedural Matters

### 1. Preliminary matters

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "*grant* a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001)(emphasis in original). Where a motion raises no disputed questions of fact, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the record either conclusively resolves all material factual disputes against the government or raises no disputed questions of fact that are material to my decision.

### 2. Procedural default

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255

8

proceedings."). To the extent that I can construe Rogers's claims as claims of ineffective assistance of counsel, I will consider them on the merits.

### C. *Ineffective Assistance Of Counsel*

#### 1. *Applicable standards*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003); *see also Steele v United States,* 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, ___ U.S. ___, ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466

9

U.S. 668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

As to the deficient performance prong, "The Court acknowledged [in *Strickland*] that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689). Moreover,

> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," [*Strickland*, 466 U.S. at 689], the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.,* at 690, 104 S. Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.,* at 688, 104 S. Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.,* at 690, 104 S. Ct. 2052.

10

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. To put it another way,

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*,] 466 U.S. at 688, 104 S. Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687, 104 S. Ct. 2052.

*Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 787 (2011); *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (quoting *Richter*). There are two substantial impediments to making the required showing of deficient performance. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Also, the court "'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."'" *King*, 595 F.3d at 852-53 (quoting *Ruff v. Armontrout*, 77 F.3d 265, 268 (8th Cir. 1996), in turn quoting *Strickland*, 466 U.S. at 690).

The second prong of the *Strickland* analysis requires the challenger to prove prejudice. *Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403 (citing *Strickland*, 466 U.S. at 691-92). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

11

judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid*. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ––––, 131 S. Ct., at 791.

*Pinholster*, ___ U.S. at ___, 131 S. Ct. at 1403. However, even where the petitioner "suffered prejudice from his lawyer's error," he is not entitled to § 2255 relief unless the lawyer's error was also the result of conduct that was professionally unreasonable at the time. *King*, 595 F.3d at 852-53.

The two prongs of the "ineffective assistance" analysis are usually described as sequential. Thus, if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003). On the other hand, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)); *accord Gianakos*, 560 F.3d at 821 ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.' *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052).").

### 2. *Failure to argue against U.S.S.G. § 2B1.1(b)(10) enhancement*

Rogers alleges, by counsel, that his trial counsel provided ineffective assistance by failing to object to a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(10), for use

12

of an "access device" because, he argues, the bad checks used to perpetrate the bank fraud scheme in this case did not constitute an "access device." Brief in Support at 9. The respondent asserts that, at the time of sentencing, there was no case law to support the position that bad checks did not constitute "access devices" for purposes of application of this section of the sentencing guidelines. Response at 8. Further, respondent argues that the decision not to pursue the objection to the enhancement was a strategic decision made after considering that three other defendants previously convicted for their involvement in the same scheme had been sentenced using the enhancement. Response at 9. The respondent claims that, in light of the previous sentences of co-defendants, Rogers's trial attorney made the strategic decision that it would be more effective to concentrate on addressing allegations that Rogers had threatened a judge. Response at 9. Finally, the respondent argues that Rogers cannot establish prejudice because the record makes it clear that Rogers's sentence would have been 120 months even if he had not received the two-level enhancement. Response at 9-10.

Here, the two-level enhancement at issue arose pursuant to U.S.S.G. § 2B1.1(b)(10), and provided in relevant part, at the time of Rogers's sentencing, as follows:

> If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels.

U.S.S.G. § 2B1.1(b)(10), subsequently amended and renumbered, U.S.S.G. § 2B1.1(b)(11)).

13

Application note 9(a), applicable to this section of the guidelines, adopted the definitions found in 18 U.S.C. § 1029, as follows:

> (1) the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other things of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument);

> (2) the term "counterfeit access device" means any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device;

> (3) the term "unauthorized access device" means any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud.

18 U.S.C. § 1029(e)(1)-(3).

At the time of Rogers's sentencing hearing, the Eighth Circuit Court of Appeals had not yet ruled on whether or not this enhancement would apply to a bank fraud scheme that originated solely from the use of fraudulent paper checks, as the scheme in Rogers's case did. However, both the United States Court of Appeals for the Fifth Circuit and the United States Court of Appeals for the Tenth Circuit had ruled that the term "access device" would not apply to a fraudulent check cashing scheme, prior to Rogers's sentencing hearing. In *United States v. Hughey*, 147 F.3d 423 (5th Cir. 1998) the conviction of a defendant charged under 18 U.S.C. § 1029 with "trafficking or using one or more unauthorized access devices" was reversed because the defendant's conduct involved only "the creation and presentation of bad checks." The court in *Hughey* noted that the plain text of 18 U.S.C. § 1029(e)(1) specifically excludes conduct involving

14

"transfer[s] originated solely by paper instrument." *Hughey*, 147 F.3d at 434. The *Hughey* court further noted "[t]hat parenthetical exclusion unambiguously places the passing of bad checks and similar conduct outside the scope of the federal statute." *Id.*

Similarly in 2008, the United States Court of Appeals for the Tenth Circuit, in *United States v. Tatum*, 518 F.3d 769 (10th Cir. 2008), stated "Neither the counterfeit checks themselves, nor the account numbers printed on the counterfeit checks were access devices for purposes of subsections A and B of Section 2 B1.1(b)(10)." *Tatum*, 518 F.3d at 771. The court stated ,"Although the statute defining access devices is quite broad, it contains a key limitation. An access device is defined as one of a number of means of account access that can be used 'to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument ).'" The court, in *Tatum*, as in *Hughey*, relied on the legislative history of 18 U.S.C. § 1029, stating,

> "Indeed, the legislative history of § 1029 reveals that 'Congress was focused on the fraudulent use of [access] devices in connection with credit transactions,' *United States v. McNutt*, 908 F.2d 561, 563 (10th Cir. 1990), and specifically intended to exclude conduct such as passing bad checks." *Tatum*, 771; *see* S. Rep. No. 98-368, at 10 (1984); *see also* H.R. Rep. No. 98-894, at 19 (1984).

*Hughey*, 147 F.3d at 434.

One of Rogers's co-defendants raised this specific issue, for the first time, on his appeal to the Eighth Circuit Court of Appeals. On his appeal, the Prosecution conceded, and the Eighth Circuit Court of Appeals found, that I had erred in applying, to the co-defendant, the § 2B1.1(b)(10) enhancement to the check cashing scheme that Rogers was involved with, because the enhancement cannot be applied to offenses that involve a

15

transfer originated solely by paper instrument, for example, a scheme limited to fraudulent check cashing. *See United States v. Butler*, 646 F.3d 1038 (8th Cir. 2011).

Although "[c]ounsel's decision not to raise an issue unsupported by then-existing precedent does not constitute ineffective assistance," *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002), "[a]n attorney's performance is deficient if it "fell below an objective standard of reasonableness." *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). "With respect to attorney performance, [this court] must determine whether, in light of all the circumstances, the lawyer's performance was outside the range of professionally competent assistance." *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Tosh v. Lockhart*, 879 F.2d 412, 413 (8th Cir. 1989). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Fretwell v. Norris*, 133 F.3d 621, 624 (8th Cir. 1998) (citing *Strickland*, 466 U.S. at 689.)

Here, although Rogers's trial attorney initially objected to application of the two-level enhancement on the ground that the checks did not meet the definition of an "access device," he withdrew his objection to application of the enhancement prior to sentencing. Atty. Aff. para. 2. Rogers's attorney states in his attached affidavit that he withdrew his objection to application of the enhancement because he was aware that three of Rogers's co-defendants had made the same argument with regard to application of the enhancement, and that I had rejected that argument and applied the enhancement in each case. Atty Aff. para. 2. Rogers's trial counsel also states in his affidavit that he was unaware of either *Hughey* or *Tatum*. Atty Aff. para. 2. Further, Rogers's trial counsel states that, in

16

preparing for the sentencing hearing, he and Rogers agreed that there were other issues that required more focus at sentencing and that they made a strategic decision to concentrate on those issues and withdraw the objection to the enhancement. Atty Aff. para. 2.

While strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, strategic choices "resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel." *Cole v. Roper*, 623 F.3d 1183, 1198 (8th Cir. 2010) (citing *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991)). Rogers's trial attorney asserts that the decision to withdraw the objection to application of the enhancement on the grounds that the check fraud scheme did not involve use of an "access device" was a strategic decision made after consultation with his client. Atty Aff. para. 2. However, Rogers's attorney also inaccurately states that the same argument had previously been made to, and rejected by, me in the cases of three of Rogers's co-defendants. Atty. Aff. para.2. A review of the record indicates that the enhancement was not objected to on the grounds that a bank fraud scheme originating solely from bad checks did not constitute an "access device," in any of Rogers's co-defendants' cases at the district level. In the case of Lyles, I applied the enhancement, but Lyles had not objected to the enhancement in the PSIR, nor had he addressed it in his sentencing memorandum. *See* Crim. docket nos. 259, 275. Sanders, another of Rogers's co-defendants to whom I applied the enhancement, also had not objected to the application of the enhancement in the PSIR, nor challenged it in his sentencing memorandum. *See* Crim. docket nos. 261, 269. While one of Rogers's co-defendants, Butler, did subsequently successfully raise the issue on appeal, Butler did not argue against the enhancement on the grounds that a fraudulent check cashing scheme did not constitute an "access device" at the district court level, but had argued against the

17

enhancement only on the ground that he had no knowledge of how the checks were created. *See* Crim. docket nos. 235, 267, 297.

Additionally, Rogers's attorney acknowledges that he was unaware of either *Hughey* or *Tatum* when he made the decision to withdraw his prior objection. Atty. Aff. para. 2. The rulings in both *Hughey* and *Tatum* would have been easily accessible, given any legal research. I cannot find that the strategic decision to withdraw the objection to the enhancement was a decision based on diligent preparation and investigation. Therefore, the decision to withdraw the objection is not protected by the presumption in favor of counsel, and I find that Rogers's trial attorney performed deficiently in this case. *See Cole*, 623 F.3d at 1198 (citing *Kenley*, 937 F.2d at 1304, as stating that strategic choices "resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel.").

However, "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691). As the Supreme Court has explained,

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [*Strickland*, 466 U.S.] at 694, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result.

*Richter*, 562 U.S. at ----, 131 S. Ct. at 791.

The respondent asserts that even if the conduct of Rogers's attorney is found to have fallen outside the range of reasonable professional assistance, Rogers suffered no prejudice because, in Rogers's case, I decided to vary upward from the guidelines based on his

18

violent criminal history. Response at 9. Respondent argues that, while application of the two-level increase pursuant to U.S.S.G. § 2B1.1(b)(10)(B) would have increased Rogers's potential sentence from a guideline range of 41 to 51 months, to a guideline range of 51 to 63 months, I would still have varied upwards to a sentence of 120 months, regardless of the guideline range, because of Rogers's violent criminal history. Response at 9.

Rogers argues, citing *Aloniz v. United States*, 351 F.3d 365, 368 (8th Cir. 2003), that "[a]n error that increases a defendant's sentence by as little as six months can be prejudicial under an ineffective assistance of counsel analysis." Brief at 12. Further, Rogers argues that the record in this case does not reflect whether I deemed the 120-month sentence appropriate based on the overall factors or based on the advisory guideline sentence. Reply Brief, at 3. Rogers asserts that if I deemed that 120 months was appropriate based on the fact that it was approximately double the high end of the 51 to 63 months advisory guideline range, Rogers was prejudiced because a sentence that is approximately double the high end of the guideline range if the enhancement is not applied, is approximately 100 months. Reply Brief, at 4.

I find that, in this case, Rogers has established that, if his trial counsel had not withdrawn his objection, there is a reasonable probability that the issue would have been properly before me, as a contested sentencing issue, for the first time, and after consideration of statutory language and prior non-binding case law, there is a reasonable probability that I would have determined that the two-level enhancement should not have been applied in this case. *See Strickland*, 466 U.S. at 694, 104 S. Ct. 2052. I also find that, although I stated during Rogers's sentencing hearing that I would have varied up to 120 months, even if I hadn't denied acceptance of responsibility, the record also demonstrates that I was concerned about the reasonableness of an upward variance in comparison to the guideline range and the possibility of going too high when the instant

19

offense was a fairly modest bank fraud case. Sent. Trans. at 148-149, 162. My statements indicate that a consideration of the variance in relation to the guideline range was included in my contemplation of the appropriate sentence in Rogers's case. For these reasons, I find that Rogers has established, with regard to withdrawal of the objection to the two-level enhancement pursuant to U.S.S.G. § 2B(10)(b), both that his attorney performed deficiently, and that Rogers was prejudiced by the deficient performance.

### 3. *Failure to adequately investigate Rogers's mental health*

Rogers, by counsel, asserts that he was diagnosed with intermittent explosive disorder in 2007, which causes him to engage in violent outbursts that are "disproportionate to the situation at hand." Brief at 12. Rogers argues that, since I varied upward from the guidelines sentence, by a significant amount, based solely on Rogers's history of violent behavior, his trial counsel should have investigated his mental health, specifically this condition, and presented the information to the court as a means of mitigating his sentence. Brief at 13. Rogers also asserts that this information would have assisted my evaluation of his need for treatment as opposed to incarceration, when I considered the § 18 U.S.C. 3553(a) factors. Brief at 13.

The respondent claims that the record does not establish that Rogers ever presented any mental health issues to his trial counsel and never asked his trial counsel to investigate such issues. Response at 10, 11. Respondent further asserts that the record establishes that Rogers previously refused to take medication for intermittent explosive disorder and that, after a second evaluation, the diagnosis indicated that Rogers was "fine" and no medication was prescribed. Response at 11. Further, respondent claims that Rogers insisted that he had no emotional or mental health problems. *Id*. at 11. Finally, respondent argues, based on the affidavit of trial counsel, the decision not to use Rogers's

20

initial diagnosis of intermittent explosive disorder was a strategic decision made by trial counsel, after consultation with Rogers. *Id.* at 11.

"Evidence of ... emotional disturbance is typically introduced by defendants in mitigation." *Hill v. Lockhart*, 28 F.3d 832, 844 (8th Cir. 1994) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982); *see also Pickens v. Lockhart*, 714 F2s 1455, 1466 (8th Cir. 1983) ("[T]here is no dispute that evidence of ... emotional instability may be relevant in mitigation")). Counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary, in the context of a claim of ineffective assistance with regard to mental health experts. *See Kenley*, 937 F.2d at 1308 ("[C]ounsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made."). As I have previously stated, "[I]n the specific context of a claim of ineffective assistance of counsel relating to failure to investigate, prepare, and present expert testimony concerning mental health issues, the Eighth Circuit Court of Appeals has explained that the *Strickland* inquiry involves asking whether counsel conducted an adequate investigation and whether counsel's decision to refrain from further investigation and presentation of mental health mitigation evidence was reasonable." *Johnson v. United States,* 860 F. Supp. 2d 663, 878 (N.D. Iowa 2012) (quoting *Worthington v. Roper*, 631 F.3d 487, 500(8th Cir. 2011)). Counsel's performance may be found ineffective if he performs little or no investigation. *See Kenley*, 937 F.2d at 1308 (counsel ineffective where "it was not a reasonable strategy that led counsel not to investigate, but lack of thoroughness and preparation."). "Counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made." *Id.* at 1308 (citing *Chambers v. Armontrout*, 907 F.2d at 835). In other words, counsel has a duty to make

reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, at 690-691).

The record indicates that trial counsel was made aware of Rogers's possible mental health issues, at least as early as receipt of the PSIR, which provides:

> The defendant reported that he was diagnosed with Intermittent Explosive Disorder while incarcerated in state prison as a result of his bad temper. The defendant stated that prison officials wanted to prescribe him Depakote and three other medications for his condition, but he did not want to take said medications and insisted that he be re-evaluated. The results of the second evaluation determined that he was "fine." This information is unverified. The defendant otherwise reported no history of mental or emotional health concerns.

First Final PSI, at ¶ 75; Crim. docket no. 200.

Trial counsel's affidavit also indicates that he did discuss mental health issues with his client, as follows:

> Mr. Rogers and I discussed the mental health information contained in the presentence report. I saw no grounds whatsoever for a downward departure based on diminished mental "capacity." Mr. Rogers demonstrated a superior capacity for understanding issues and arguing his positions.

Atty. Aff. ¶ 3. Further, trial counsel stated:

> Mr. Rogers did bring up whether we could use to our advantage the diagnosis of intermittent explosive disorder. He proposed arguing that the disorder was to blame for his repetitive recidivism and violence. However, Mr. Rogers had told the Probation Office that he had rejected the diagnosis at the time, and that he had managed to get a second evaluation that dropped the diagnosis. And the logical extension of the argument would be that Mr. Rogers would return to a life of

22

crime and violence after his federal incarceration because it is
beyond his control.

Affidavit at ¶ 3.

The record in this case demonstrates that trial counsel made a decision not to present Rogers's mental health issues as evidence without even seeking any of Rogers's prior mental health records, but merely relying on the information that he found in the PSIR and information reported to him by his client. Affidavit at ¶ 3. Rogers's trial counsel did not have a sufficient record upon which to make this allegedly strategic decision; this is especially true when the PSIR itself indicates that the information relating to Rogers's mental health is unverified. PSIR at ¶ 75. Without seeing Roger's prior mental records, trial counsel could not make an informed decision about how Rogers's mental health issues would affect my decisions regarding either mitigation or the possibility for treatment as opposed to imprisonment. Therefore, I find that Rogers's trial counsel performed deficiently by failing to adequately investigate Rogers's mental health status prior to making a strategic decision to not present mental health evidence at Rogers's sentencing hearing.

However, as discussed above, "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos*, 560 F.3d at 821 (quoting *Strickland*, 466 U.S. at 691).

In this case, the record establishes that the sole basis for my upward departure was Rogers's history of violence. Sent. Trans. at 162. Rogers has attached as an exhibit to his § 2255 Motion, an entry from Wikipedia explaining, in part, both what intermittent explosive disorder entails and that there have been somewhat successful treatments for it, including cognitive behavioral therapy. Motion at 12-13. Rogers has also attached a copy

of a diagnostic sheet indicating that he was diagnosed with major intermittent explosive disorder on December 15, 2007. Motion at 16. The attached records also show that, as of the date of his release from state prison, May, 15, 2009, Rogers continued to be diagnosed with current, major intermittent explosive disorder. Motion at 24. I find that Rogers has established that there is a reasonable probability that, if trial counsel had investigated Rogers's mental health issues more fully, I would have had more information regarding the possibly mitigating explanation for Rogers's previous violent outbursts and would have had reason to believe that there were potential successful treatments for this mental disorder, which would have led to a substantial likelihood that my upward variance in Rogers's case may not have been quite as significant, because I would have known that Rogers's mental health history was relevant to his violent history. *See Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.

I find that Rogers has established both that his trial counsel performed deficiently by failing to investigate his mental health issues and that he was prejudiced by this failure.

### 4. *Failure to argue against the motion for upward departure*

Rogers argues, by counsel, that his trial counsel "did nothing to oppose" the Prosecution's Motion For Upward Departure and Variance (Crim. docket no. 314). Brief at 14. Rogers argues that his trial counsel should have investigated Rogers's family and social history and educational and training history. Brief at 15. Respondent asserts, first, that, although Rogers's trial counsel did not file an objection to the Prosecution's motion, he did argue at sentencing that Rogers's upbringing and social history should be taken into account. Response at 13. Further, respondent argues, Rogers does not now indicate what specific information should have been presented to the court in opposition to the Prosecution's motion, but merely speculates that more evidence should have been presented. Response at 13. Further, respondent argues, Rogers was not prejudiced by any

24

failure to provide further information regarding Rogers's family or social history or his educational and training history because nothing in that regard would have been enough to offset Rogers's history of violence, which was the sole basis for the upward variance in his case. Response at 13.

With regard to Rogers's allegation that his trial counsel should have investigated his family and social history and educational and training history, Rogers does not provide any evidence of any information that would or should have been found by his trial counsel, nor does he even describe such information or provide any information regarding potential witness testimony. Rogers § 2255 Motion and supporting documents are surprisingly vague when it comes to identifying the alleged witnesses and the substance of their testimony, lacking even an affidavit from any of them saying who they are, what they know, and how that helps his case. *See Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001). "[M]erely stating unsupported conclusions will not suffice." *See Smith v. United States*, 635 F.2d 693, 696 (8th Cir. 1980) (citing *Woods v. United States*, 567 F2d 861, 863 (8th Cir. 1978)).

Because Rogers made no showing, with regard to his claim that his trial counsel failed to investigate or produce evidence with regard to Rogers's social and family history or his educational or training history, of what other witnesses were available, how they would have testified, and why such additional evidence would likely have affected the result, as to the motion for an upward variance, he has failed to prove either that trial counsel's assistance was ineffective or that he was prejudiced. *See Saunders*, at 953 (quoting *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998)).

### III.  CONCLUSION

Upon the foregoing, Rogers's Motion Under 28 U.S.C. § 2255 (Civ. docket no. 3), is **granted and his sentence is hereby vacated.**  Re-sentencing will be set by separate order after expiration of respondent's time to appeal.

**IT IS SO ORDERED.**

**DATED** this 11th day of June, 2013.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA